IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARGONAUT-MIDWEST INSURANCE COMPANY, | CIVIL ACTION |
| Plaintiff, | NO. _____ |
| v. | |
| COLT LOGISTICS INC., DANIEL E. MURRAY, JOHN COLLIER, and FELIX ACHAEMPONG, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Argonaut-Midwest Insurance Company (AMIC), by and through its undersigned counsel, hereby files its Complaint for Declaratory Judgment against defendants Colt Logistics Inc. (Colt), Daniel E. Murray (Murray), John Collier (Collier) and Felix Achaempong (Achaempong), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action under 28 U.S.C. § 2201, *et seq.*, for declaratory judgment commenced by AMIC against Colt, Murray, Collier and Achaempong.

2. This declaratory judgment action involves insurance coverage for an underlying action pending in New Jersey state court, captioned *Felix Achaempong v. John Collier, et al.*, No. ESX-L-5952-12 (N.J. Super., Essex Cty.) (the Underlying Action).

3. The Underlying Action arises out of a November 8, 2013 accident in which Achaempong was allegedly struck by a tractor/trailer allegedly driven by Collier, and he was allegedly pinned between the trailer and the loading dock (the Underlying Action).

4. AMIC has been providing a defense to Colt, Murray and Collier in the Underlying Action, but after extensive documented attempts to locate Colt, Murray and Collier, using three different investigative agencies over a period of more than four years, AMIC has been completely unable to locate Collier or any current or former principals or employees of Colt.

5. One of AMIC's investigators was able to speak with Murray one time, when Murray called the investigator after hearing that he was looking for Murray, but Murray refused to provide the investigator with his phone number, his current address, or any other contact information; he promised that he would call the investigator back the following week; and he has completely failed to re-contact the investigator or AMIC.

6. More recently, another AMIC investigator physically located Murray at one of the several addresses to which AMIC had sent notices and correspondence to Murray (1813 Yorktowne Road, Toms River, New Jersey), but after identifying himself and the reason he was looking for Murray, Murray told the investigator to leave and said that he wanted nothing to do with him.

7. Despite knowing that he has been sued in the Underlying Action and that AMIC has been providing a defense without his assistance, and despite knowing that AMIC has been diligently attempting to locate him, Murray has completely failed to cooperate in AMIC's investigation of the claim and in AMIC's defense of the Underlying Action.

8. As a result, AMIC has been appreciably prejudiced, both in its ability to ascertain the facts relevant to its coverage determination as to whether the AMIC policy provides coverage for this claim, and in its ability to defend Colt, Murray and Collier in the Underlying Action.

9. AMIC seeks a declaration that it is not obligated to continue to provide a defense to, nor indemnify, Colt, Murray or Collier with respect to the claims asserted against them in the Underlying Action.

## THE PARTIES

10. Plaintiff AMIC is a corporation organized and existing under the laws of the state of Illinois, with its principal place of business located in Illinois.

11. Defendant Colt is a corporation organized and existing under the laws of the state of New Jersey, with its principal place of business located in New Jersey.

12. Defendant Daniel Murray is a citizen of the state of New Jersey.

13. Defendant John Collier is a citizen of the state of New Jersey.

14. Defendant Felix Achaempong is a citizen of the state of New Jersey.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as diversity of citizenship exists between AMIC (an Illinois corporation with an Illinois principal place of business), on the one hand, and Colt (a New Jersey corporation with a New Jersey principal place of business), Murray (a New Jersey citizen), Collier (a New Jersey citizen), and Achaempong (a New Jersey citizen), on the other hand, and the matter in controversy (i.e., the alleged underlying injury claim and the defense costs associated with the underlying action) exceeds the sum or value of $75,000, exclusive of interests and costs.

16.     This Court has personal jurisdiction over each of the Defendants, because Colt's principal place of business is in New Jersey, and Murray, Collier and Achaempong are each New Jersey citizens.

17.     Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiff's claims, including the injuries and the underlying litigation, occurred in this District.

## FACTUAL ALLEGATIONS

### A.     The Underlying Claim

18.     According to the complaint in the Underlying Action, Achaempong was injured on November 8, 2013, when he was allegedly struck by a tractor/trailer allegedly driven by Collier, and he was allegedly pinned between the trailer and the loading dock. A true and correct copy of the complaint in the Underlying Action is attached as **Exhibit A**.

19.     The initial police crash investigation report into the accident contained no information about the driver or the vehicle at issue in the accident, principally because both had gone by the time the police officer arrived at the warehouse. A true and correct copy of the police crash investigation report is attached as **Exhibit B**.

20.     However, the Essex County Prosecutor's Office Report, which found no criminal activity and recommended no action, contained information about the vehicle (a 1997 Freightline Tractor Trailer, NJ License Plate XW518A, VIN # 2FUYDEDB9VA749545), identification of the trailer at issue (Maine registration no. 2517255, VIN # 145C402S7FL003726), the driver's name (John Collier, of 228 Nunda Avenue in Jersey City, NJ), and the truck owner's name (Daniel E. Murray, of 12 Linden Avenue in Kearny, NJ). A true and correct copy of the Essex County Prosecutor's Office Report is attached as **Exhibit C**.

21. AMIC was notified of Achaempong's claim against Colt on or about March 31, 2014 by his counsel, and not by Colt itself.

22. Upon notice of the claim, AMIC sent an acknowledgement of the claim to Colt dated April 1, 2014, and a follow-up letter dated April 2, 2014 requesting that Colt call AMIC about the claim. Both letters were returned to AMIC on April 14, 2014, as non-deliverable and unable to forward. A true and correct copy of the April 1, 2014 and April 2, 2014 letters is attached as **Exhibit D**.

23. By letter dated April 22, 2014, AMIC reserved its right to decline coverage; requested that Colt contact AMIC to discuss the claim; and advised that the failure to cooperate with AMIC may jeopardize its coverage with AMIC. That letter, too, was returned to AMIC on May 5, 2014, as non-deliverable and unable to forward. A true and correct copy of the April 22, 2014 reservation of rights letter is attached as **Exhibit E**.

### B. The Underlying Action

24. On or about August 24, 2015, Achaempong filed a lawsuit against Colt, Murray, Collier, and several other defendants, including KKD, LLC, RIT Trucking Inc., Interpool Inc., TracIntermodal, and Trac Lease Inc., seeking relief for his injuries allegedly suffered in the accident. *See* **Exhibit A**.

25. The Underlying Action pleads alternative counts against each of the defendants here, as well as other defendants, including KKD, LLC, RIT Trucking Inc., Interpool Inc., TracIntermodal, and Trac Lease Inc., alternatively alleging that each of the defendants was the "owner, operator, lessor, lessee or otherwise in control of a truck" operated by defendant Collier when it struck Achaempong. *See generally* **Exhibit A**.

### C. The AMIC Insurance Policy

26. Plaintiff AMIC issued Commercial Lines insurance policy no. MC8125490 to Colt for the policy period of November 21, 2012 to November 21, 2013 (the AMIC Policy). A true and correct copy of pertinent portions of the AMIC Policy is attached as **Exhibit F**.

27. The AMIC Policy provides liability coverage to Colt, but only for bodily injury caused by an accident resulting from the ownership, maintenance or use of a "covered auto":

> **SECTION II – LIABILITY COVERAGE**
>
> **A. Coverage**
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto"….

*See* **Exhibit F**.

> **1. Covered Auto and Who Is An Insured**

28. The AMIC Policy's Motor Carrier Coverage Form Declarations identify the "covered autos" under the Policy as (1) specifically scheduled autos; (2) hired autos (*i.e.*, autos that Colt leases, hires, rents or borrows), and (3) nonowned autos (*i.e.*, autos that Colt does not own, lease, hire, rent or borrow that are used in connection with its business).

29. The AMIC Policy also defines whether, in addition to Colt, the owner or driver of a covered auto is an insured, which is dependent on the type of covered auto it is and the owner's and driver's relationship to that covered auto and to Colt:

> **1. Who Is An Insured**
>
> The following are "insureds":
>
> **a.** You for any covered "auto".
>
> **b.** Anyone else while using with your permission a covered "auto" you

6

       own, hire or borrow except:

       **(1)**  The owner, or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

       **(2)**  Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.

       **(3)**  Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

       **(4)**  Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while moving property to ro from a covered "auto".

       **(5)**  A partner (if you are a partnership), or member (if you are a limited liability company), for a covered "auto"owned by him or her or a member of his or her household.

   **c.**  The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

   **d.**  The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.

   **e.**  Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.…

   30.  Only one tractor – a 1995 International tractor – is identified in the AMIC Policy's Schedule of Covered Autos You Own. The 1997 Freightliner identified in the Essex County Prosecutor's Office Report is not a specifically scheduled vehicle on the AMIC Policy, so it does not meet the first requirement to be a covered auto.

7

31.     A critical, but open, question is whether Colt leased, hired, rented or borrowed the 1997 Freightliner, or, if not, whether it nonetheless used the 1997 Freightliner in connection with its business, *i.e.*, whether the 1997 Freightliner meets either the second or third requirements to be a covered auto.

32.     If the 1997 Freightliner was not leased, hired, rented or borrowed by Colt, and if it was not used in connection with its business, then it does not meet the AMIC Policy's definition of "covered auto", and the AMIC Policy therefore provides no coverage for the claim against Colt.

33.     Likewise, even if the 1997 Freightliner met the AMIC Policy's definition of covered auto, there are critical, but open, questions about the relationship of the alleged driver (Collier) and alleged owner (Murray) to Colt and to the alleged covered auto and to Colt.

34.     If Collier and/or Murray do not meet the AMIC Policy's definition of who is an insured, then the AMIC Policy provides no coverage to them.

35.     These questions remain open and unanswered because despite diligent efforts, AMIC has been completely unable to locate Collier or any current or former principals or employees of Colt, and, despite being briefly located by AMIC's investigator, Murray has completely failed to cooperate in AMIC's investigation of the claim and in AMIC's defense of them in the Underlying Action.

### 2.     **The Insureds' Duty to Cooperate with AMIC**

36.     The AMIC insurance policy contains a condition requiring the insureds to "cooperate with us in the investigation or settlement of the claim or defense against the 'suit'" as a pre-condition to AMIC providing coverage under the policy:

**SECTION V – MOTOR CARRIER CONDITIONS**

**A.     Loss Conditions**

\* \* \*

8

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of an "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident", claim, "suit" or "loss". Include:
   (1) How, when and where the "accident" or "loss" occurred;
   (2) The "insured's" names and address; and
   (3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:
   (1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.
   (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".
   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".
   (4) Authorize us to obtain medical records or other pertinent information.
   (5) Submit to examination at our expense, by physicians of our choice, as often as we require.

*See* **Exhibit F**.

37. Despite diligent efforts, AMIC has been completely unable to locate Collier or any current or former principals or employees of Colt, and, despite being briefly located by AMIC's investigator, Murray has completely failed to cooperate in AMIC's investigation of the claim and in AMIC's defense of them in the Underlying Action.

38. As a result, and as detailed below, AMIC has been appreciably prejudiced, both (1) in its ability to ascertain the facts relevant to its coverage determination as to whether the AMIC policy provides coverage for this claim (*i.e.*, to determine whether the 1997 Freightliner is a

covered auto, and whether coverage is provided to Collier and/or Murray), and (2) in its ability to defend Colt, Murray and Collier in the Underlying Action.

> D. **Diligent Efforts To Locate Colt, Murray and Collier, and Murray's Complete Non-Cooperation With AMIC Once Briefly Located**

39. After AMIC's April 2014 letters were all returned as non-deliverable and unable to forward, AMIC retained an independent adjuster/investigator that investigated from July 2014 to June 2015, submitting eleven reports to AMIC.

40. While the adjuster was able to generate some leads on the location of Colt, Murray and Collier, it was ultimately unable to actually locate any of them, and in its final report to AMIC, it advised that it had exhausted all attempts to identify and make contact with the Colt driver.

41. After the underlying plaintiff failed to locate and serve Colt with his complaint in the Underlying Action, his counsel filed a motion for substituted service on AMIC, which was granted by Order dated April 1, 2016.

42. AMIC has since been providing a defense in the Underlying Action to Colt, Murray and Collier, all *in absentia*.

43. In October 2016, after scouring the investigative file, and performing additional research to gather as many potential addresses as possible, non-cooperation letters were sent on AMIC's behalf to Colt, Murray, and Collier, at approximately 9 or 10 potentially associated addresses each, both by certified mail and by regular U.S. first class mail. A true and correct copy of the October 10, 2016 letters sent to Colt, Murray and Collier are attached as **Exhibit G**.

44. The October 10, 2016 letters advised Colt, Murray and Collier that their lack of cooperation with AMIC to date has greatly hindered and prejudiced AMIC's investigation of the claim and its defense of the three defendants in the lawsuit; advised them of the critical need for

their cooperation with AMIC; and advised them of the specific issues and questions that need to be resolved.  *See* **Exhibit G**.

45. In particular, AMIC advised Colt, Murray and Collier that, without information or cooperation from Colt, or the alleged owner or alleged driver of the truck at issue, AMIC has been unable to determine:

> (1) whether the truck at issue is a covered auto, because the truck is not a specifically described auto in the AMIC policy, and without cooperation, AMIC is unable to determine whether the truck otherwise qualifies for coverage;
>
> (2) whether the driver at issue (John Collier) is entitled to coverage, because he was not identified in Colt's application as a Colt driver, and without cooperation, AMIC is unable to determine the involvement of Mr. Collier and Mr. Murray; and
>
> (3) whether Colt is even a proper defendant, because information provided by plaintiff's counsel regarding the truck's chassis ID and its shipping container ID raises the possibility that the driver and tractor-trailer were hauling for a different company at the time of the accident, which is a potentially liability clearing fact for Colt and for AMIC. AMIC is unable to independently confirm the accuracy of that information without Colt's (and Messrs. Collier's and Murray's) cooperation.

46. While the overwhelming majority of both certified and U.S. mail envelopes were returned as undeliverable, six U.S. mail envelopes were **not** returned – the U.S. mail envelopes addressed to each of the three addressees at 1813 Yorktowne Blvd in Toms River NJ, and the U.S. mail envelopes addressed to each of the three addressees at 228 Nunda Avenue 2, Jersey City NJ, so it is likely that whomever lives at those locations accepted the mail and potentially conveyed the letters' existence to the addressees.

47. In late November 2016, a second investigator, Bauer Trial Preparation (Bauer), was retained to investigate and once again try to locate Murray, Collier, and Victor Greico (whose name had been identified on Colt's commercial automobile application as one of the persons responsible for driver hiring and training).

48. In its December 8, 2016 report, the Bauer investigator reported to AMIC that received a call from Murray, who stated that he heard that Bauer was looking for him.  Murray

refused to provide any information about who had asked him to contact Bauer; his current address; or his current cell number.

49. Murray told the Bauer investigator that he was not a Colt officer and he stated that the only role he played for Colt was as a driver. He further denied being the driver or being at the scene of the accident involved in the Underlying Action.

50. Murray advised that he would contact the Bauer investigator the following week, but he never followed up, and because he refused to provide the Bauer investigator with his contact information, the Bauer investigator was unable to locate Murray again.

51. In September 2017, defense counsel in the Underlying Action sent several subpoenas ad testificandum to Murray and Collier at various potential addresses, seeking to compel their appearance at defense counsel's office, and seeking to compel their cooperation in their own defense.

52. Neither Mr. Murray nor Mr. Collier ever responded to these subpoenas.

53. More recently, yet another AMIC investigator, Pacific Claims Services, Inc. (Pacific Claims), located Murray at one of the several addresses to which AMIC had sent notices and correspondence to Murray (1813 Yorktowne Road, Toms River, New Jersey, *i.e.*, one of the addresses discussed in paragraph 46 above), advising Murray about the Underlying Action and asking for Murray's cooperation in AMIC's defense of Colt and Murray.

54. The Pacific Claims investigator recognized Murray from a photo, identified himself, and said that he was looking for Daniel Murray of Colt Logistics, because Colt's insurance company was trying to defend a lawsuit involving Colt and that Murray was named in the lawsuit.

55. The Pacific Claims investigator reported that before he could even finish his sentence, Murray told him to leave and said that he wanted nothing to do with him.

56. Despite diligent efforts, AMIC has been completely unable to locate Collier or any current or former principals or employees of Colt, and, despite being briefly located by AMIC's investigator, Murray has completely failed to cooperate in AMIC's investigation of the claim and in AMIC's defense of them in the Underlying Action.

57. As a result, AMIC has been appreciably prejudiced, both (1) in its ability to ascertain the facts relevant to its coverage determination as to whether the AMIC policy provides coverage for this claim (*i.e.*, to determine whether the 1997 Freightliner is a covered auto, and whether coverage is provided to Collier and/or Murray), and (2) in its ability to defend Colt, Murray and Collier in the Underlying Action.

58. Moreover, AMIC has been appreciably prejudiced and its substantial rights have been irretrievably lost because AMIC has irretrievably lost the opportunity to ascertain facts relevant to whether the 1997 Freightliner was a covered auto under the Policy, and, by extension, whether AMIC is obligated to defend any of them in the Underlying Action.

59. Specifically, AMIC has been unable to ascertain whether Colt leased, hired, rented or borrowed the 1997 Freightliner, and, if not, whether it nonetheless used the 1997 Freightliner in connection with its business – facts that are wholly within Colt's knowledge and that are critical to AMIC's coverage determination.

60. Likewise, on the merits, AMIC has been appreciably prejudiced in defending Colt, Murray and Collier in the Underlying Action.

61. Absent Murray's failure to cooperate, and the inability to locate Colt and Collier despite diligent efforts, AMIC would likely succeed in its defense of Colt.

62. Specifically, underlying plaintiff's counsel provided certain information about the 1997 Freightliner's chassis identification and shipping container identification, but AMIC has not been able to verify the accuracy of that critical information.

63. In particular, if true, then the 1997 Freightliner at issue may have been hauling for another company and/or was under another company's control at the time of the accident. However, AMIC is unable to establish a potentially liability-clearing fact in defending Colt, and, by extension, for AMIC.

64. AMIC seeks a declaration that it is not obligated to continue to provide a defense to, nor indemnify, Colt, Murray or Collier with respect to the claims asserted against them in the Underlying Action.

## **COUNT I**

### **(Declaratory Judgment as to Colt, Murray and Collier)**

65. AMIC repeats and realleges each of the preceding allegations contained in paragraphs 1 through 64 of this Complaint, as though fully set forth herein.

66. Colt, Murray and Collier have a duty to cooperate with AMIC in its investigation of this claim and in its defense of the Underlying Action, as a pre-condition to coverage under the AMIC Policy.

67. Despite diligent efforts, AMIC has been completely unable to locate Collier or any current or former principals or employees of Colt, and, despite being briefly located by AMIC's investigators, Murray has completely failed to cooperate in AMIC's investigation of the claim and in AMIC's defense of them in the Underlying Action.

68. AMIC has been appreciably prejudiced both (1) in its ability to ascertain the facts relevant to its coverage determination as to whether the AMIC policy provides coverage for this

14

claim (*i.e.*, to determine whether the 1997 Freightliner is a covered auto, and whether coverage is provided to Collier and/or Murray), and (2) in its ability to defend Colt, Murray and Collier in the Underlying Action.

69. AMIC has been appreciably prejudiced and its substantial rights have been irretrievably lost, because AMCI has irretrievably lost the opportunity to ascertain facts relevant to whether the 1997 Freightliner was a covered auto under the Policy, and, by extension, whether AMIC is obligated to defend any of them in the Underlying Action.

70. Specifically, AMIC has been unable to ascertain whether Colt leased, hired, rented or borrowed the 1997 Freightliner, and, if not, whether it nonetheless used the 1997 Freightliner in connection with its business – facts that are wholly within Colt's knowledge and that are critical to AMIC's coverage determination.

71. Likewise, on the merits, AMIC has been appreciably prejudiced in defending Colt, Murray and Collier in the Underlying Action.

72. Absent Murray's failure to cooperate, and the inability to locate Colt and Collier despite diligent efforts, AMIC would likely succeed in its defense of Colt.

73. Specifically, underlying plaintiff's counsel provided certain information about the 1997 Freightliner's chassis identification and shipping container identification, but AMIC has not been able to verify the accuracy of that critical information.

74. In particular, if true, then the 1997 Freightliner at issue may have been hauling for another company and/or was under another company's control at the time of the accident. However, AMIC is unable to establish a potentially liability-clearing fact in defending Colt, and, by extension, for AMIC.

75. Because AMIC has been appreciably prejudiced and its substantial rights have been irretrievably lost, AMIC seeks a declaration that the AMIC Policy provides no coverage to Colt, Murray or Collier.

76. AMIC further seeks a declaration that AMIC has no obligation to defend Colt, Murray and Collier in the Underlying Action, and that it may therefore withdraw from its defense of Colt, Murray and Collier in the Underlying Action.

77. Finally, AMIC further seeks a declaration that AMIC has no obligation to indemnify Colt, Murray and Collier with respect to the Underlying Action.

**WHEREFORE,** Plaintiff Argonaut-Midwest Insurance Company prays for a declaratory judgment against Defendants Colt Logistics Inc., Daniel Murray, and John Collier, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, determining:

(1) That the AMIC Policy provides no coverage to Colt, Murray, and Collier with respect to the Underlying Action;

(2) That AMIC has no obligation to defend Colt, Murray and Collier in the Underlying Action, and that it may therefore withdraw from its defense of Colt, Murray and Collier in the Underlying Action; and

(3) That AMIC has no obligation to indemnify Colt, Murray and Collier with respect to the Underlying Action;

and such other and further relief as the Court deems just and proper.

**STEWART | SMITH**

/s/ William S. Stewart
William F. Stewart
300 Four Falls Corporate Center
300 Conshohocken State Road, Suite 670
West Conshohocken, PA  19428
T: (484) 344-5296
F: (484) 534-9470
E: wstewart@StewartSmithLaw.com

*Attorneys for Plaintiff,*
*Argonaut-Midwest Insurance Company*

Dated: July 18, 2018