NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARGONAUT-MIDWEST INSURANCE COMPANY,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>COLT LOGISTICS INC., et al.,<br>　　　　　Defendants. | Civil Action No. 18-11783 (KM) (MAH)<br><br><br>OPINION |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's motion for service of process on two Defendants by publication, and for an enlargement of time to serve. Pursuant to FED. R. CIV. P. 78 and Local Civil Rule 78.1, no oral argument was heard. For the reasons set forth below, the motion for service of process on two Defendants by publication is granted in modified form.

## II. BACKGROUND

On July 18, 2018, Plaintiff, Argonaut-Midwest Insurance Company, filed a Complaint seeking a declaratory judgment against Defendants Colt Logistics Inc., Daniel E. Murray, John Collier and nominal Defendant Felix Achaempong. *See* Complaint, July 18, 2018, D.E. 1. The instant action concerns insurance coverage in an underlying state court action, *Achaempong v. Collier, et al.*, No. ESX-L-5952-12 (N.J. Super., Essex Cty.), in which Achaempong sued Colt, Murray and Collier, as well as other Defendants, as a result of an accident that occurred on November 8, 2013. *Id.* at 4-8. In that accident, a tractor trailer struck Achaempong, pinning him between the truck and a loading dock. *Id.* Plaintiff seeks a declaratory judgment against

Defendants Colt, Murray and Collier determining that: 1) Plaintiff's policy provides no coverage to Defendants regarding the underlying action; 2) Plaintiff has no obligation to defend Defendants in the underlying action and may therefore, withdraw from its defense of Defendants in the underlying action; and 3) Plaintiff has no duty to indemnify Defendants with respect to the underlying action.[1] *Id.* at 16. Plaintiff successfully served Defendant Colt on September 13, 2018, when it received a letter from the New Jersey State Treasurer formally accepting service of the Complaint on behalf of Colt.[2] Exhibit J to Affidavit of William F. Stewart in Support of Motion for Leave to Effect Service by Publication, Oct. 12, 2018, D.E. 11-11. Plaintiff was also able to successfully serve Achaempong at his current address by serving his sister there on October 2, 2018. Exhibit K to Affidavit of William F. Stewart in Support of Motion for Leave to Effect Service by Publication, Oct. 12, 2018, D.E. 11-12. However, Plaintiff argues that it has made repeated attempts to serve Defendants Collier and Murray over the last four years but that they appear to be evading contact and personal service. Brief in Support of Motion to Effect Service by Publication, Oct. 12, 2018, D.E. 11, at 1. Plaintiff certifies that, in an attempt to locate and serve Defendants, Plaintiff has hired "three separate investigators over the last four

---

[1] In the underlying action, Plaintiff "has been providing a defense to Colt, Murray and Collier . . . under a reservation of rights, under a liability policy that it issued to Colt, but, as detailed in the complaint in this action, after extensive documented attempts to locate Colt, Murray and Collier, using three different investigative agencies over a period of more than four years, AMIC has been completely unable to locate any current or former principals or employees of Colt; Murray affirmatively refused to cooperate with [Plaintiff] once he was located; and Collier has evaded contact and now service." Affidavit of William F. Stewart in Support of Motion for Leave to Effect Service by Publication, Oct. 12, 2018, D.E. 11-1, at ¶ 6.

[2] Federal Rule of Civil Procedure 4(h)(1)(B) permits service of process by delivering a copy of the summons and complaint to agent authorized by law to receive service of process. Pursuant to N.J.S.A. 2A:15-30.1(b), the State Treasurer is authorized to receive service of process on behalf of entities that have failed to maintain a registered agent or failed to register with the State Treasurer.

years." Affidavit of William F. Stewart in Support of Motion for Leave to Effect Service by Publication, Oct. 12, 2018, D.E. 11-1, at ¶ 8. Plaintiff argues that personal service has been unsuccessful, and now seeks leave to serve Defendants by publication pursuant to N.J. Ct. R. 4:4-5. Brief in Support of Motion to Effect Service by Publication, Oct. 12, 2018, D.E. 11, at 3. Plaintiff proposes substituted service by publication once a week for three consecutive weeks in the Star-Ledger and by sending a copy of the Complaint by regular mail and by certified mail to Murray and Collier at each man's last three known addresses.

### III. DISCUSSION

#### A. Service by Publication

Federal Rule of Civil Procedure 4(e) states:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>> (2) doing any of the following:
>>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Under New Jersey law, personal service is the primary method of effecting service. *See* N.J. Ct. R. 4:4-4(a), 4:4-5(a). New Jersey Court Rules 4:4-3 and 4:4-4(a) prescribe the methods of effecting personal service within the state. Substitute or constructive service, however, is permitted when personal service within the state cannot be effected. *See* N.J. Ct. R. 4:4-4(b),

3

4:4-5.  For *in personam jurisdiction*, New Jersey Court Rule 4:4-4(b) provides the methods of substitute or constructive service, such as personal service outside the state, simultaneous mailings by ordinary and certified (or registered) mail, and "as provided by court order, consistent with due process of law." N.J. Ct. R. 4:4-4(b)(1), (b)(3).  For *in rem* and *quasi in rem jurisdiction*, New Jersey Court Rule 4:4-5 provides the methods for personal, substitute, and constructive service, such as service by publication.  Regardless of the type of action, substitute or constructive service requires a demonstration of due diligence that satisfies the requirements specified in New Jersey Court Rule 4:4-5(b).  *See* N.J. Ct. R. 4:4-5(a); 4:4-4 (b)(1) (cross-referencing Rule 4:4-5(b)); N.J. Ct. R. 4:4(b)(3) (noting that service by a court order consistent with due process is precluded "[i]f service can be made by any of the modes provided by this rule"); *see also Garrett v. Matisa*, 394 N.J. Super. 468, 475–76 (Ch. Ct. 2007) (using affidavit requirement in Rule 4:4-5 as model for unique notice issue).

Diligence has no fixed standard.  *See Modan v. Modan*, 327 N.J. Super. 44, 48 (App. Div. 2000).  The diligence exercised and the alternative service requested must meet the constitutional requirements of due process.  *Cf. O'Connor v. Abraham Altus*, 67 N.J. 106, 126–127 (1975).  Namely, the "elementary and fundamental requirement of due process" is that there be "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *O'Connor*, 67 N.J. at 126 (quoting *Mullane*, 339 U.S. at 314); *see also Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("Since *Mullane* was decided, we have regularly turned to it when confronted with questions regarding the adequacy of the method used to give notice.").  Accordingly, when considering diligence, the Court conducts a fact-sensitive inquiry "measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant." *Modan*, 327 N.J.

Super. at 48 (internal citation and quotation marks omitted).  Diligence requires that a plaintiff follow up on information it possesses or can reasonably obtain, but it does not necessarily mean a plaintiff take every conceivable action.  *Id.* at 48–49 (collecting cases).

Service by publication, as requested here, "is hardly favored and is the method of service that is least likely to give notice."  *M & D Assocs. v. Mandara*, 366 N.J. Super. 341, 353 (App. Div. 2004) (citing *Modan*, 327 N.J. Super. at 48).  "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed."  *Mullane*, 339 U.S. at 315.  Nevertheless, "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights."  *Id.* at 317.

Here, the Court is satisfied that Plaintiff has demonstrated due diligence in attempting to serve Defendants Collier and Murray.  A review of the Affidavit of William F. Stewart, Esq., establishes that, in accordance with N.J. Ct. R. 4:4-4(a), Plaintiff hired three separate investigators over the last four years to attempt to locate and serve Colt, who had not yet been served, Murray and Collier.  In April 2014, after having received the notice of the claim from Achaempong's attorney, Plaintiff sent three letters to Colt, all of which were returned to Plaintiff as undelivered.  Affidavit of William F. Stewart in Support of Motion for Leave to Effect Service by Publication, Oct. 12, 2018, D.E. 11-1, at ¶ 9.  Plaintiff engaged Custard Insurance Adjusters in June 2014 in an attempt to locate Colt and the alleged driver of the tractor trailer at issue.  *Id.* at ¶ 10.  Custard was unable to make contact with any of the Defendants.  Exhibit C to Affidavit of William F. Stewart in Support of Motion for Leave to Effect Service by Publication, Oct. 12,

2018, D.E. 11-4. Plaintiff then hired a second investigator, Bauer Trip Preparation (hereinafter "Bauer"), in an attempt to locate Colt, Murray and Collier. Affidavit of William F. Stewart in Support of Motion for Leave to Effect Service by Publication, Oct. 12, 2018, D.E. 11-1, at ¶ 12. Mr. Stewart sent letters on Plaintiff's behalf on October 11, 2016 to approximately 10 addresses that the investigators had presented as potentially viable addresses for Defendants. *Id.*, ¶ 13. Each letter was sent via regular United States mail and certified mail, return receipt requested and each letter was returned to Plaintiff's counsel. *Id.*, ¶¶ 13-14. The certified envelopes sent to Murray and Collier were both returned as "unclaimed," while both the regular and certified mail envelopes sent to Colt were returned as "unknown," "undeliverable" and/or "unable to forward." *Id.*, ¶ 14. The regular mail envelopes sent to Collier and Murray were not returned by the Postal Service. *Id.*, ¶¶ 15, 21, 25.

After Bauer conducted on-site visits to numerous of the potential addresses discovered for Defendants, Murray, using a blocked telephone number, contacted the Bauer investigator and indicated that he had heard that Bauer was looking for him. *Id.*, ¶ 16. Murray refused to provide either his current address or cell phone number. *Id.* He also declined to confirm whether he was affiliated with any of the addresses Bauer had found him to be associated with. *Id.* Murray did indicate that he was staying with a friend in North Carolina but refused to provide the friend's name or address. *Id.* He stated that he would be in New Jersey for the holidays and the investigator asked him to meet with him. *Id.* Murray said to "give him a week to get in touch" but the investigator never heard from him again. *Id.*

Plaintiff hired a third investigator, Pacific Claims Service, Inc. (hereinafter "Pacific"), while the Complaint in this matter was being prepared. *Id.*, ¶ 17. On July 15, 2018, the Pacific investigator physically located Murray at a backyard barbecue at a Toms River address but once

6

the investigator identified himself, Murray told him to leave and that he did not want anything to do with him. *Id.*, ¶ 20. Certified mail sent to that same Toms River address was returned "unclaimed" but regular mail sent to the address was not returned. *Id.*, ¶ 21. After Plaintiff filed this action, its process server attempted to serve Murray three times at that Toms River address in early August 2018. *Id.*, ¶ 22. Three weeks after the conversation at the barbecue, on August 6, 2018, Murray's wife answered the door to the process server, and stated that Murray no longer lives there and they are separated. *Id.*, ¶ 23. Murray's wife refused to accept service or provide Murray's current address. *Id.*

Once Plaintiff filed the Complaint in this matter, in August 2018, its process server attempted to serve Collier at the same Jersey City address that the correspondence had been mailed to, of which the ones sent regular mail were not returned by the U.S. Postal Service. *Id.*, ¶ 26. The process server confirmed with a neighbor that Collier does live at that address but that "he is on the road most of the time and is rarely home." *Id.*, ¶ 27. The process server made five attempts to serve Collier at that address and four of those times there was no vehicle in the driveway. *Id.*, ¶¶ 28-29. However, on one attempt there was a vehicle parked in the driveway but after repeated knocking on the door by the process server there was no response, so the process server concluded that Collier was possibly avoiding service. *Id.*, ¶ 29.

In light of these circumstances, the Court will allow Plaintiff to effectuate service upon Defendants Collier and Murray by publication. It is clear that Plaintiff has exhausted the options for personal service and service via certified mail and that service by publication, while not likely to be successful, is the sole remaining option. Although Plaintiff might not have taken every conceivable action, its conduct demonstrates that it followed up on information it possessed or could have reasonably obtained, and that its efforts meet the constitutional

requirements of due process. *See Modan*, 327 N.J. Super. at 48–49; *accord Mullane*, 339 U.S. at 314–15. Accordingly, the Court will allow Plaintiff to effectuate service upon Defendants by publication.

### B. Enlargement of Time to Serve Defendants

Plaintiff has also requested an extension of time to serve Defendants Collier and Murray. The deadline to serve expired on October 16, 2018, six days after Plaintiff filed the current motion. Pursuant to the December 1, 2015 amendment to Federal Rule of Civil Procedure 4(m), a party must serve the defendant within 90 days after the complaint is filed or "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). The United States Court of Appeals for the Third Circuit has stated that "determination of whether to extend time involves a two-step inquiry. The district court first determines whether good cause exists for a plaintiff's failure to effect timely service. If good cause exists, the extension must be granted. If good cause does not exist, the district court must consider whether to grant a discretionary extension of time. . . .In determining whether good cause exists, a court's primary focus is on the plaintiff's reasons for not complying with the time limit in the first place[.]" *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997) (citations omitted). The good cause prong requires that "a plaintiff demonstrate good faith and some reasonable basis for noncompliance with the time specified in the rules." *House v. H.U.D.*, Civ. Action No. 05-3811, 2006 WL 3779762 *7 (D.N.J. Dec. 20, 2006) (citing *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995)). Thus, when determining whether or not good cause exists, the Court should assess, among other things,

8

"the reasonableness of plaintiff's efforts to serve," and "whether the plaintiff moved for an enlargement of time to serve." *Pilone v. Basik Funding, Inc.*, Civ. Action No. 05-3798, 2007 WL 203958 * 2 (D.N.J. Jan. 24, 2007).

In this case, good cause exists to grant Plaintiff's requested relief. The Court has already found that Plaintiff demonstrated due diligence in its attempts to serve Defendants, and has been unable to serve Defendants, not through any fault or lack of effort on Plaintiff's part. The Court has also found that Plaintiff has acted reasonably in light of the circumstances. Accordingly, Plaintiff shall have until February 20, 2019 to serve Defendants.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's motion for leave to effectuate substitute service is granted and Plaintiff's request to extend the deadline to serve Defendants is granted. Plaintiff will be permitted until February 20, 2019 to serve Defendants.

However, the Court respectfully disagrees with the details of the service that Plaintiff proposes. Plaintiff proposes to publish notice once a week, for three consecutive weeks in The Star Ledger. In an effort to ensure a greater possibility that Defendants will read the publication, the Court will require Plaintiff to publish the notice in The Star Ledger once per week, for five consecutive weeks. Five weeks in the periodical appears to exceed the minimum requirements of Rule 4:4-5(a)(3). However, the Court is satisfied that it represents a fair and reasonable effort to provide Defendants notice of the litigation. *See* 28 U.S.C. § 1655. In addition, the Court will require Plaintiff to publish the notice in the Charlotte Observer once per week, for five consecutive weeks because during some portion of the time during which Plaintiff has been attempting to locate Murray he was residing in North Carolina.

9

Additionally, consistent with Rule 4:4-5(a)(3), the Court will require Plaintiff to mail, via regular and certified mail, a copy of the Summons and Complaint to Defendants at their three last known addresses.  Although Plaintiff's motion papers suggest this undertaking may be futile, the Court finds good cause for it in ensuring the greatest possibility that Defendants will receive notice of the suit and afforded an opportunity to be heard.

The Court shall issue an order consistent with this Opinion.

s/*Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Date:  December 20, 2018